**EQUITABLE HOLDING CORPORATION v. WOODY et al.**

No. 264.

Circuit Court of Appeals, Second Circuit.

March 13, 1933.

See, also (D. C.) 57 F.(2d) 207.

Alfred T. Davison, of New York City (Orrin G. Judd, of New York City, of counsel), for appellant.

White & Case, of New York City (William St. John Tozer, of New York City, of counsel), for appellees.

Before L. HAND, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge.

This appeal is from an order in bankruptcy denying the petition of a creditor of the brokerage firm of Woody & Company. An involuntary petition was filed against the partners on June 19, 1930; a corporate receiver was appointed on the same day, but they were never adjudicated. They filed schedules on April 17, 1931, in which the claim in suit appeared at $80,900, and on July 10, 1931, two of the partners made an offer of composition, which was sent to all creditors, including the claimant at bar. In this they agreed to pay "to each creditor whose claim is allowed a cash dividend of 50% within 30 days after this Plan shall

become effective as hereinafter provided," that is, on approval by the court. All claims were to "be stated as of June 19, 1930 (accounts in which securities were carried being liquidated by valuing securities at the prices of June 19, 1930, as determined by the Receiver's auditors)." On September 23, 1931, the court confirmed the composition, which had been duly accepted, though without the claimant's vote. The order appointed the receiver as distributing agent, and directed it out of the deposit made, to pay 50% "upon the claims of the said creditors which have been allowed and upon the claims contained in the bankruptcy schedules." Payment was to be withheld in the case of "any creditor whose claim is objected to by the said alleged bankrupts * * * until the hearing and determination of said objection by the Special Master to be appointed, * * * All such objections shall be filed * * * within ten days of the order."

On June 9th and 10th, 1930, the claimant ordered the alleged bankrupts to buy certain securities. The firm told the claimant that they had bought them, and in reliance upon this the claimant paid $95,687.50. They did buy the securities through another broker, who had a lien upon them, and they were appropriated by him; the claimant never receiving any part, though delivery was due and demanded before petition filed. On August 19, 1930, the claimant filed a "petition and claim" with a special master, appointed on June 19, 1930, "for the administration of the estate." This set forth the above facts, alleged that the securities were in the other broker's hands, that he made claim to them, and that they had not been delivered, though demanded before petition filed both from him and from the alleged bankrupts. It concluded with a prayer that the court adjudge the securities to be the claimant's property, that their proceeds, if sold by the other broker, be marshalled in the claimant's favor, and that the claimant be adjudged to have "a general claim against the above-named alleged bankrupts for the difference between the value of any and all of the above listed securities that may be delivered to it and the total amount paid by your claimant." No hearing was had upon the claim before the order of confirmation, or for many months afterwards; and so matters rested.

The receiver made a tender to the claimant about September 23, 1931, of a cheque for fifty per cent. of the amount scheduled, on which was a legend that it was "in complete payment and discharge of payee's claim

or claims whomsoever against, or of whatsoever nature, arising out of payee's transactions with the firm of Woody & Co." This the claimant refused to accept. In November, 1931, the receiver tendered to it securities equivalent to those bought on June 9 and 10, 1930, again with the condition that they too should be accepted in full settlement of all claims. The claimant refused this as well, and in December, 1931, amended its "petition and claim," and pressed before the special master for its allowance, and an order directing the alleged bankrupts to pay the dividend upon it. It also sought to hold the distributing agent secondarily liable on the ground that since the composition, it had returned to the alleged bankrupts some of the consideration. The master allowed a dividend upon the amount scheduled, and denied the rest. The claimant accepted the dividend, and petitioned the District Court for the remainder, also demanding that the receiver be held personally for interest upon fifty per cent. of the amount scheduled from the entry of the order of composition till payment of the dividend received. The judge dismissed this petition for lack of jurisdiction and the claimant appealed.

██ A composition is a bargain between the bankrupt and his creditors which the court compels dissentients to accept. In re Klein, 22 F.(2d) 906 (C. C. A. 2). The obligations are to be determined from the language used, as in any other contract. The offer at bar was to pay "claims allowed"; it presupposed that there should be some action by the court upon them. In this it was in accord with section 12a of the Bankruptcy Act (11 USCA § 30 (a), which requires that in compositions before adjudication the court shall call a meeting of creditors, among other things "for the allowance of claims." Such a meeting was called before the special master, who had already received the claimant's "petition and claim," between which and the schedules the disparity appeared; the claim demanded generally the sum of $95,000, less the value of any returned securities, of which there had been none. The order of confirmation directed the receiver to pay the dividend upon "claims which have been allowed and upon claims contained in the bankruptcy schedules," but it did not profess to "allow" any claims. On the contrary it contemplated the future allowance of disputed claims, though it provided only for "objections" by the debtors. Such "objections" could not of course cover scheduled claims for a stated amount, because to these they would not object; the schedules admitted them. It could

therefore only refer to filed claims which varied from the schedules, or to claims filed but not scheduled at all. If the "petition and claim" was a claim, the debtors were bound to object within ten days.

██ We think that it was a claim within the meaning of the order, and, being already on file, was as good as though the claimant had appeared at the meeting and formally renewed it by then presenting it. If the schedules were not themselves an "objection," it stood allowed. To hold that they were not would, however, be a stricter construction than we should care to adopt; rather we think that the schedules are to be read as an "objection," and as the case stood upon confirmation, the claim had been filed and objected to, and was within the competence of the special master to determine, as the order expressly provided. Thus, though the composition had been confirmed, the case was not ready for complete termination; the receiver, as distributing agent, was bound to withhold the dividend until the claim had been allowed. If so, the court retained jurisdiction and the claimant or the alleged bankrupts were entitled to bring on the matter for disposition.

This is not a case where a creditor, not scheduled, has failed to file any claim until after confirmation. In re Mirsky, 32 F.(2d) 676 (C. C. A. 2); In re Abrams & Rubins (D. C.) 173 F. 430. We need not even go so far as Wechsler v. U. S., 27 F.(2d) 850 (C. C. A. 3) where the creditor had been scheduled for a smaller amount, and filed for a larger after confirmation, and the claim was allowed to the extent of the undistributed deposit. Rather the situation is equivalent to that in Re Mirsky, 32 F.(2d) 676 (C. C. A. 2), The Aqua Realty Co. claim, In re Everick Art Co., 39 F.(2d) 765 (C. C. A. 2), and In re Watman Konopolsky & Bernstein (D. C.) 291 F. 886, where the schedules themselves represented the claims as disputed. It is the same whether the schedules recite that the claim is disputed, or whether the dispute appears by a variance between them and filed claims. Either situation advises the court that the composition is not yet ripe for final disposition; that the claim must be "allowed" before the case is closed, and jurisdiction ends.

██ The claimant also seeks to charge the receiver as distributing agent for exacting the agreement that the payment of the dividend should be a full discharge. This was wholly unjustified. Whatever the result of confirmation, it was for the law and the law alone to

determine it. To attempt to add to its effect was plainly invalid, and indeed an improper interposition by the receiver between the parties in a matter where it was bound to be impartial. In refusing to pay unconditionally, if payment had been due, it exposed itself to the charge of a contempt of the court whose orders it disregarded. However, the cheque tendered was by hypothesis not yet due at all; the distributing agent was to withhold payment in the case of disputed claims until they were allowed, and this had not yet been done. It had not been directed to pay so much of the claims as were undisputed, though that might have been a just thing to do; and the claimant can succeed only in case it disobeyed the court's order; it must point to some imperative provision, and there is none. Thus it rested upon the claimant to press to liquidation before it could demand anything, though perhaps it might have got an interim order for so much as was not in dispute. Its position as to this part of its claim is indeed inconsistent with the rest. Either the agent was in default for refusing to pay unconditionally the amount scheduled, or it was not. If it was, the claimant was confined to that amount, and the agent might be liable for interest. If it was not in default, no interest can be collected from it by way of punishment for contempt.

 The claimant further insists that the agent should be charged secondarily for so much of the consideration deposited by the alleged bankrupts as it turned back to them, in case they do not respond to the order. In this it is correct. We held in Re Everick Art Co., supra (C. C. A.) 39 F.(2d) 765, that the court had power after composition to compel the alleged bankrupt to supply the consideration which he had failed to deposit originally to cover a disputed claim. A fortiori he may be compelled to restore what he has received back from the distributing agent. Moreover, the agent in restoring the consideration before a disputed claim has been adjudicated, associates himself with the alleged bankrupt's wrong and becomes liable with him, though only as surety. Of course the agent could not be liable for more, but the alleged bankrupts must respond for the full amount. In re Everick Art. Co., supra (C. C. A.) 39 F. (2d) 765.

[13, 14] It was proper to apply directly to the District Court, and not petition, to review the master's order. Compositions are always for the court, sections 12e, 1(16) of the act, 11 USCA §§ 30 (e), 1 (16); the master acts

as such, not as a court of bankruptcy. In re Everick Art Co., supra (C. C. A.) 39 F.(2d) 765.

The order is reversed and the cause remanded with instructions to determine the validity and amount of the claim. An order will enter requiring the alleged bankrupts to pay the proper dividend to the agent for distribution. The agent will be secondarily liable for so much as it restored to the alleged bankrupts. The claim for interest against the agent will be denied.

Order reversed.